# IN THE DISTRICT COURT OF THE UNITED STATES
## NORTHERN DISTRCT OF OHIO

| | |
|---|---|
| TERRELL LEECH, c/o </br> North Central Correctional Complex </br> 670 Marion-Williamsport Road </br> Marion, Ohio 43302, </br> </br> Plaintiff, </br> v. </br> </br> MANAGEMENT AND </br> TRAINING CORPORATION </br> 1300 East Ninth Street </br> Cleveland, Ohio 44114, </br> </br> and </br> </br> MTC MEDICAL, LLC </br> c/o CT Corporation System </br> 1300 East Ninth Street </br> Cleveland, Ohio 44114, </br> </br> and </br> </br> TYLER STUCKEY, PHYSICIAN </br> ASSISTANT </br> c/o MYC Medical, LLC </br> 1300 East Ninth Street </br> Cleveland, Ohio 44114, </br> </br> and </br> </br> JOHN STEIN, M.D. </br> c/o Team Health </br> 265 Brookview Centre Way, #400 </br> Knoxville, TN 37919 </br> </br> and | CASE </br> </br> **JUDGE** </br> </br> RE-FILED COMPLAINT FOR </br> MEDICAL MALPRACTICE AND </br> CIVIL RIGHTS VIOLATIONS </br> </br> </br> </br> </br> 42 United States Code § 1983 </br> </br> </br> </br> </br> </br> JURY DEMAND </br> ENDORSED HEREIN |

| | |
|---|---|
| JOHN DOE(s) | ) |
| c/o North Central Correctional Complex | ) |
| 670 Marion-Williamsport Road | ) |
| Marion, Ohio 43302, | ) |
| | ) |
| Defendants. | ) |

## JURISDICTION AND PARTIES

1. Plaintiff Terrell Leech, Ohio Inmate #A686764, is currently incarcerated in Marion County, Ohio, due to a felony conviction occurring in Lucas County Common Pleas Court in Lucas County, Ohio.

2. Defendant "MANAGEMENT AND TRAINING CORPORATION, LLC ("MTC") is a business entity operating is a foreign corporation, organized under the laws of the State of Delaware, authorized to do business in the State of Ohio, with a place of business in Marion, Marion County, Ohio and whose business has impact on and interaction with interstate and intrastate commerce; and provides services at North Central Correctional Complex (NCCC)

3. At all times relevant hereto, Defendant Management & Training Corp. (hereinafter MTC) is a foreign corporation, organized under the laws of the State of Delaware, authorized to do business in the State of Ohio, with a place of business in Marion, Marion County, Ohio and whose business has impact on and interaction with interstate and intrastate commerce.

4. At all times relevant hereto, Defendant MTC Medical, LLC (hereinafter Medical) is a limited liability corporation, organized under the laws of the State of Ohio, authorized to do business in the State of Ohio, is a subsidiary of defendant MTC, has its principal place of business at NCCC in Marion, Marion County, Ohio and whose business has impact on and interaction with interstate and intrastate commerce.

5. At all times relevant hereto, Defendants MTC and Medical have acted under contract with and on behalf of ODRC and the State of Ohio in operating NCCC.

6. At all times relevant hereto, Defendant Dr. John Stein (hereinafter Dr. Stein) is a physician, licensed by the State of Ohio, was employed by, or at, Defendant MTC and/or Medical, worked at NCCC, acted with the authority of and on behalf of defendants MTC and Medical while in the course of his professional capacity at MTC and Medical at NCCC and/or acted with the authority of and on behalf as an employee, staff, independent contractor and/or agent of MTC and Medical and is being sued here in his official capacity as a physician and is also being sued in his and individual capacity

7. At all times relevant hereto, Defendants John Doe(s), whose full names and addresses are unknown to plaintiff presently, each was an employee of MTC and Medical acted with the authority of and on behalf of defendants MTC and Medical while in the course of their employment with MTC and/or Medical at NCCC and/or acted with the authority of and on behalf as employees, staff, corrections officers, medical personnel, and/or agents of MTC and/ or Medical are being sued here in their official capacity as a health care providers and/or employees, agent and are also being sued in their individual capacity.

8. At all times herein, defendants MTC and Medical, through its agreement, contract, and/or Memorandum of Understanding with the ODRC and the State of Ohio, and by operating a prison Memorandum of Understanding with the ODRC and the State of Ohio, and by operating a prison in the State of Ohio, and, pursuant to the United States Constitution, the Ohio Administrative Code including but not limited to Chapter 5120:1 et seq. and the Ohio Revised Code, including but not limited to §§311 et seq., 341.01 et seq., owed a duty to plaintiff to provide reasonable and adequate medical care and treatment to its prisoners. Further, where applicable herein, defendants MTC and Medical had a duty to protect plaintiff from unreasonable, foreseeable risks of harm.

9. At all relevant times here and upon information and belief, Defendant Health Care Administrator ( hereinafter HCA) (whose name is unknown presently) is an employee of MTC and Medical, working at NCCC, acted with the authority of and on behalf of defendants MTC and Medical, while in the course of her/his employment at MTC and Medical and/or acted with the authority of and on behalf as an employee, staff, corrections officer and/or

agent of MTC and Medical is being sued in his/her official capacity and his/her individual capacity.

## JURISDICTION AND VENUE

10. Plaintiff re-alleges lines 1-9 as if fully re-written here.

11. This action was previously filed and dismissed without prejudice with consent of this Court on January 14, 2020; as such, it is being re-filed within one-year as authorized by Ohio's Saving Statute.

12. This Court has original jurisdiction pursuant 28 U.S.C. §1331 over Plaintiff's causes of action as these arise under the United States Constitution and federal law, 42 U.S.C. §1983 and supplemental jurisdiction pursuant to 28 U.S.C. §1367 over Plaintiff's State law causes of action that form part of the same case or controversy as the federal claims.

13. Venue lies in the United States District Court for the Northern District of Ohio because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Marion County, Ohio, which lies in the jurisdiction of this Court, 28 U.S.C. §1391(b)(2).

## FACTUAL ALLEGATIONS

14. Plaintiff re-alleges lines 1-13 as if fully rewritten here.

15. On December 8, 2015, while incarcerated at NCCC, Terrell Leech sustained a serious physical injury while playing basketball; another inmate inadvertently stuck his finger into plaintiff's right eye, striking and cutting the eyelid and inner corner of his right eye.

16. Plaintiff immediately went to Medical for medical attention. The RN on duty (whose name is presently unknown) wanted Mr. Leech to see a physician at an outside hospital for treatment, thus she called her supervisor (whose name and position are presently unknown) who may have been the HCA, may have been Dr. Stein, or may have been Doe 1-5, requesting permission to send Leech to an outside local hospital for treatment. This request was denied, instead the RN was instructed to tape Leech's eye shut and place him on Doctor sick call for the following day. The RN cleaned the area as

        best as possible, placed a protective cover over the eye, taped it down, placed plaintiff on the doctor's sick call for the next day and instructed him to return to his unit.

17. On or about December 9, 2015 plaintiff returned to the medical unit and met with defendant Dr. Stein, who determined stitches were needed to address the laceration but, refusing to send plaintiff to an outside medical facility for examination and appropriate treatment by a specialist,

18. Defendant Dr. Stein attempted to provide appropriate medical care and treatment. However, in attempting to sew the sutures in the corner of plaintiff's eye, Dr. Stein stated that the medical tools at the facility were inadequate to perform the necessary medical care, treatment and procedure. Regardless that he knew of the inadequacy of the medical equipment available to him and the complications that would result by attempting to repair plaintiff's eye injuries, Defendant Dr. Stein acted anyway.

19. On December 9, 2015, at the same appointment as discussed in the preceding paragraph, Plaintiff overheard a conversation between medical assistant, possibly defendant Tyler Stuckey, and/or Defendant 1-5 and defendant Dr. Stein. The medical assistant stated that a knot may result from the stitches at the corner of the eye, and Dr. Stein responded, "no, I'll just refer him to plastics." Again, Defendant Dr. Stein, knowing of the inadequate medical equipment, the serious injuries to plaintiff's eye, and the probable consequences of going forward, Defendant Dr. Stein acted anyway.

20. After December 9, Plaintiff returned to medical frequently for cleansing of his injured right eye. On or about December 14, 2015 a health care assistant, possibly defendant Stuckey, Doe 1- 5, and/or Dr. Stein, was providing care to plaintiff and requested that the Supervisor on duty examine plaintiff's eye. Defendants Doe 1-5, Stuckey, Stein and/or the HCA, a Supervisor, determined the stitches needed removing and a health care person (it is unclear who at this time) began removing the sutures; however, he, she was only able to take out 1 of the 4 stitches, then commented he/she was unable to get the others due to location of them and because of inadequate medical equipment. Another medical person (whose name is unknown), defendants Doe(s), Stuckey, HCA, and/or Dr. Stein was able to remove another suture but could not get the 2 remaining, so a third medical person Defendants Doe(s), Stuckey, the HCA and/or Dr. Stein attempted, struggled

     considerably but was successful in taking the last 2 sutures out. During this process plaintiff suffered significant pain, suffering, fear and anxiety.

21. Plaintiff returned to his unit and examined his right eye in the mirror and saw that the eyelid had an opening or slit remaining in it. Leech returned to medical immediately and talked with Defendants Dr. Stuckey and/or Stein about the condition; Mr. Leech was told to wait a week and the slit should fully heal shut.

22. Mr. Leech asked Defendants Dr Stein and/or Stuckey why the eyelid injury healed improperly to which defendants said, "we'll send you to plastics." Plaintiff was instructed to return to see Stuckey and/or Dr. Stein in a week.

23. Throughout the foregoing, Plaintiff had kept his mother, Teresa Leech, informed of the events taking place. Particularly, he explained the ordeal of removing the stitches and the way his eye had healed, she became very upset and called ODRC in Columbus, called Warden Turner at NCCC, and called a State Representative who was involved with the Correctional Institutional Investigation Committee (CIIC).

24. Upon information and belief, during the week of December 21, 2015, as a result of Ms. Leech's efforts, a Ms. Stanworth visited NCCC, observed plaintiff's eye and requested that NCCC send plaintiff to an eye specialist. Plaintiff was sent to Ohio State University Wexner Medical Center (hereinafter OSU) and was seen by a specialist in December 2015.

25. The OSU physician (whose name and specialties are presently unknown) informed Mr. Leech he had a lacerated tear duct in the right eye and needed surgery in order to implant silicone tubes which would allow the tear ducts to function properly. This physician told Plaintiff he wanted to have the surgery scheduled in 14 days as scar tissue had not formed yet in the area.

26. Plaintiff was still waiting in early March, 2016 for this surgery; he filed a kite and an Informal Complaint asking defendants what was going on with his appointment.

27. On or about March 17, 2016 Mr. Leech was transported to OSU and underwent the needed surgery; the silicone tubes were to be removed in about 6 months according to the surgeon.

28. Plaintiff had an appointment to return to OSU in September and one in early October, 2016 for removal of the implants but each appointment was cancelled by defendants. Meanwhile, plaintiff went to medical informing them that his right eye was feeling irritated, uncomfortable itchy and swelling and he could feel the tube rubbing against his eye. Leech filed a kite and an Informal Complaint asking defendants what was going on with this appointment.

29. On or about October 29, 2016 the silicone tubes were removed.

30. Plaintiff suffered extreme pain, anxiety, fear, extreme emotional distress, permanent injury as a result of defendants inadequate, inappropriate medical care and treatment which was below the standard of care and for defendants denying him referral to a medical specialist despite knowing of the need for a specialist.

31. On or about December 6, 2016 plaintiff and his attorneys sent letters to Neil Turner Warden for NCCC, the HCA for NCCC, Tyler Stuckey P.A. and John Stein M.D. advising each of them that plaintiff Leech was intending to bring a medical malpractice action against them for the care and treatment rendered him and that the letter was extended the one year statute of limitations by 180 days as provided by O.R.C. Sect. 2305.113(B)(1). These letters were sent by U. S. Certified mail with return receipt requested. Plaintiff's Counsel received the signed return receipts indicating letters had been received.

32. Defendants Doe 1-5, MTC, Medical, the HCA, Dr. Stein and /or Stuckey maintained a policy, practice and custom of not providing sufficient training, education and /or hiring practices to ensure that plaintiff and other inmates were treated by medical personnel that provided appropriate and timely medical care and treatment that met not only State minimum requirements but also conformed to accepted medical care in a community.

33. These defendants maintained a policy, practice and custom of not providing sufficient and/or appropriate medical equipment, staff, referrals and/or allowing referrals to medical specialists to ensure that plaintiff and other inmates were provided appropriate and timely medical care and treatment that met not only State minimum requirements but also conformed to accepted medical care in a community.

34. Defendants MTC, Medical, the HCA, Doe 1-5, Stuckey and Dr. Stein knew of their medical personnel's failure to timely and appropriately treat inmates for serious personal injuries, including plaintiff's right eye injuries. These Defendants knew of their medical personnel's perfunctory medical treatment to inmates for serious personal injuries, including plaintiff's. These defendants were deliberately indifferent to the failure to treat plaintiff and other inmates and/or the perfunctory treatment of inmates for serious personal injuries.

35. Defendants MTC, Medical, the HCA, Doe 1-5, Stuckey and Dr. Stein knew their medical equipment was inadequate, that referrals to outside hospitals, medical specialists were routinely denied, that requests for medical consults were routinely denied, and they routinely denied requests for medical consults and/or referrals to medical specialists and/or outside hospitals, resulting in failure to timely and appropriately provide medical care and treatment to inmates for serious personal injuries, including plaintiff's right eye injuries. These Defendants knew of their medical personnel's perfunctory medical treatment to inmates for serious personal injuries, including plaintiff's. These defendants were deliberately indifferent to the failure to treat plaintiff and other inmates and/or the perfunctory treatment of inmates for serious personal injuries.

36. Defendants MTC, Medical, the HCA, Stuckey, Doe 1-5 and Dr. Stein maintained a policy, practice and custom of not providing timely, adequate and/or proper medical treatment to inmates, including plaintiff. This led to all defendants failing to discourage further constitutional violations under color of law on the part of its medical personnel, employees, staff and/or agents.

37. As a result of the above-described policies, practices, and/or customs defendants' MTC, Medical, the HCA, Stuckey and/or Dr. Stein, and Medical employees, staff, personnel, agents thereof believed that their actions would not be properly monitored by defendants' supervisory personnel and that misconduct would not be investigated, but would be tolerated.

38. The above-described policies, practices, and/or customs demonstrate a deliberate indifference on the part of defendants' MTC, Medical, the HCA, Stuckey, Dr. Stein and/or Doe 1-5 as they are inconsistent with ODRC policy, protocol, regulations, the OAC and are inconsistent with the constitutional rights of persons being held at NCCC, including Mr. Leech's.

39. The above-described policies, practices, and/or customs of defendants MTC, Medical, Doe(s), the HCA, Stuckey and/or Dr. Stein medical employees, staff, agents, personnel thereof believed that their actions would not be properly monitored by defendants' supervisory personnel and that misconduct would not be investigated or sanctioned, but would be tolerated and are inconsistent with the constitutional rights of persons being held at NCCC, including Plaintiff's.

40. The above-described policies, practices, and/or customs demonstrate a deliberate indifference on the part of all defendants to the constitutional rights of persons being held at NCCC, including Plaintiff's.

## COUNT I - 42 USC 1983, EIGHTH AMENDMENT VIOLATIONS

41. Plaintiff re-alleges lines 1-13 as if fully rewritten here.

42. Plaintiff Terrell Leech claims damages under 42 U.S.C. §1983 for the injuries set forth above against defendants MTC, Medical, Dr. Stein, HCA, P.A. Stuckey and Doe 1-5 for failing to provide him with adequate, appropriate and timely medical care and treatment in violation of his United States Constitutional rights as set forth in the Fifth, Eighth and Fourteenth Amendments prohibiting cruel and unusual treatment.

43. It was the custom, policy and/or practice of Defendants MTC, Medical, the HCA, Stuckey, Dr. Stein and Doe 1-5 to fail to exercise reasonable care in the hiring of, training of and/or supervision of medical personnel, including staff, employees, agents and personnel at NCCC.

44. This led to all defendants inadequately preventing constitutional violations on the part of its medical personnel.

45. As a direct and proximate cause of the acts, omissions, policies, practices and customs of defendants Dr. Stein, MTC, the HCA, Doe 1-5, Stuckey and Medical, they and the staff, personnel, employees, agents, and/or personnel thereof, were deliberately indifferent to plaintiff's serious medical needs.

46. As a direct result of all defendants deliberate indifference to his serious medical needs, plaintiff Leech suffered pain, anxiety, emotional distress, fear, permanent injury.

## **COUNT II - 42 USC 1983, FIFTH AND FOURTEENTH AMENDMENT VIOLATIONS**

47. Plaintiff re-alleges lines 1-46 as if fully rewritten here.

48. Plaintiff claims damages under 42 U.S.C. §1983 for the injuries set forth above against defendants MTC, Medical, Dr. Stein, the HCA, Stuckey and Doe(s) for violation of his constitutional rights under color of law.

49. Plaintiff Leech claims damages under 42 U.S.C. §1983 against defendants MTC, Medical, HCA, Dr. Stein, Stuckey and Doe 1-5 for failing to provide him adequate, appropriate and timely medical treatment in violation of his constitutional rights under color of law.

50. Defendants MTC, Medical, Dr. Stein, HCA and Doe 1-5 developed and maintained polices, practices and /or customs exhibiting deliberate indifference to the constitutional rights of individuals with serious medical injuries who are held at NCCC which caused violation of Plaintiff Terrell Leech's rights.

51. It was the policy, custom and/or practice of Defendants MTC, Medical, HCA, Stuckey, Dr. Stein and Doe 1-5 to fail to exercise reasonable care in the hiring of, training of and /or supervision of medical personnel, including staff, employees, independent contractors and /or agents at NCCC.

52. This led to all defendants inadequately preventing constitutional violations on the part of its medical personnel.

53. As a result of the above-described policies, practices and/or customs, Defendants' MTC and/or Medical employees, staff, agents, including Defendants Dr. Stein, Stuckey, the HCA and Doe 1-5, believed that their actions would not be properly monitored by defendants' supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

54. The above-described policies, customs and /or practices demonstrate a deliberate indifference on the part of all defendants to the constitutional rights of persons being held at NCCC, including Plaintiff's.

55. As a direct and proximate cause of the aforesaid acts, omissions, policies, practices and customs of defendants MTC and Medical, Dr. Stein, the HCA, Stuckey and Doe(s) provided medical care and treatment to plaintiff for his serious medical needs that was inadequate, inappropriate and untimely all of which was below the standard of care in the community.

56. Plaintiff Leech has suffered physical pain, anxiety, emotional distress, fear, further injuries, permanent injuries and will continue to do so into the future as a direct and proximate result of all Defendants deliberate indifference to his serious medical needs.

## COUNT III - COMMON LAW NEGLIGENCE

57. Plaintiff re-alleges lines 1-56 as if fully rewritten here.

58. All Defendants their agents, employees, personnel, staff, independent contractors had a duty to plaintiff to ensure that he received reasonable, prompt, adequate, appropriate medical care and treatment for injuries sustained while he was in their custody.

59. It was reasonable for all defendants their agents, staff, employees, personnel, independent contractors to provide adequate, appropriate, timely, reasonable, prompt medical care and treatment to plaintiff for the lacerations to his eye, eyelid and tear duct and if such care and treatment was not provided it was foreseeable plaintiff Leech would sustain permanent injury, further pain and suffering, and future pain and suffering.

60. It was reasonable for all defendants their agents, staff, employees, personnel, independent contractors to provide adequate, appropriate, timely, reasonable, prompt medical care and treatment to plaintiff including providing for, approving, and/or allowing medical referrals and/or consults to outside facilities and /or to medical specialist and if not provided it was foreseeable Plaintiff Leech would sustain permanent injury, further pain and suffering, and future pain and suffering.

61. All Defendants their agents, personnel, staff, employees, independent contractors failed to provide reasonable, prompt, adequate, appropriate and timely medical care and treatment to plaintiff for injuries to his right eye, eyelid and severed tear duct despite knowing of the urgency yet did not timely arrange for surgery as requested by OSU to implant the silicon ducts.

62. All Defendants their agents, personnel, staff, employees, independent contractors failed to provide reasonable, prompt, appropriate and timely referrals to, and/or consults with, medical specialists and/or outside medical facilities for medical care and treatment for plaintiff despite defendants knowledge of the urgency.

63. All Defendants their agents, personnel, staff, employees, independent contractors failed to provide reasonable, prompt, adequate medical care and treatment to plaintiff for injuries to his right eye, eyelid and severed tear duct despite knowing of the urgency yet did not timely arranged for surgery as requested by an OSU physician to remove the temporary silicon ducts.

64. These defendants' failures were a breach of their statutory and common law duties to plaintiff, who was under their care and custody. Their breach was negligence.

65. As a direct and proximate cause of all defendants' negligence, plaintiff suffered extreme pain, anxiety, fear, emotional distress, and permanent injury.

## COUNT IV - PUNITIVE DAMAGES

66. Plaintiff re-alleges lines 1-65 as if fully rewritten here.

67. Plaintiff alleges that all defendants themselves and/or through staff, agents and/or employees, acted with reckless indifference to his federal protected rights under the Fifth, Eighth, and Fourteenth Amendments throughout the events set forth herein.

68. All defendants themselves and/or through agents, staff and/or employees reckless indifference to Plaintiff's right to receive reasonable timely / appropriate medical care and treatment violated plaintiff's legal rights as provided by the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and thus infringed on his civil rights as set forth at 42 U.S.C. 1983.

69. All defendants, their agents, staff and/or employees, failure to take appropriate measures to ensure reasonable timely and /or appropriate medical services were provided to plaintiff demonstrates their deliberate indifference to plaintiff's health, safety and legal rights.

70. All defendants their staff, agents and/or employees failure to take reasonable, appropriate measures to ensure timely and /or appropriate medical services were provided to plaintiff demonstrates bad faith, willful and / or wanton reckless conduct and/ or maliciousness towards plaintiff.

71. All defendants, their agents, staff and/or employees, failure to take reasonable, appropriate measures to ensure their staff, employees, agents and/or independent contractors did not violate plaintiff's constitutional rights to timely and/or adequate medical services demonstrates a deliberate indifference to plaintiff's health, safety and legal rights.

72. All defendants, their agents and/or employees, failure to take adequate measure to ensure their staff, employees, agents and/or independent contractors did not violate plaintiff's constitutional rights to reasonable timely and/or appropriate medical services demonstrates bad faith, willful/wanton reckless conduct and/or maliciousness towards Plaintiff.

**WHEREFORE**, Plaintiff seeks the following remedies jointly and severally against all Defendants who are found liable:

1. Compensatory damages for all harm caused to Plaintiff by Defendants, including but not limited to future harm caused by the injury to Plaintiff's future employment earning and/or future medical expenses, and emotional harm.

2. Attorney fees, costs, and all remedies allowed pursuant to 42 U.S.C. § 1988.

3. Punitive damages if actual malice, bad-faith, or ill-will is proven by clear and convincing evidence, as authorized by R.C. 4112.99 and explained by *Rice v. CertainTeed Corp*, 84 Ohio St.3d 417, 1999-Ohio-361.

4. Pre-judgment and post-judgment interest at the legal rate if authorized by law.

5. Incidental damages, the costs of this action, and any other remedy necessary to effectuate justice.

>Respectfully submitted,
>
>LAW OFFICE OF DONALD GALLICK, LLC
>
>/s/ Donald Gallick
>
>_____
>DONALD GALLICK (#0073421)
>COUNSEL FOR PLAINTIFF
>190 North Union Street
>Akron, Ohio 44304
>(330) 631-6892
>donaldgallick@gmail.com

## JURY DEMAND

Plaintiff demands a jury trial consisting of eight jurors to determine liability, damages, and all facts in the instant controversy as required by Federal Rule of Civil Procedure 38 and the Seventh Amendment of the U.S. Constitution.

>/s/ Donald Gallick
>
>_____
>DONALD GALLICK (#0073421)
>COUNSEL FOR PLAINTIFF

## CERTIFICATE OF SERVICE

Counsel for Plaintiff asserts that this First Amended Complaint was served upon Counsel for Defendant via this Court's electronic filing system on this 12th day of January, 2021

>/s/ Donald Gallick
>
>_____
>DONALD GALLICK (#0073421)